UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN SCHNEIDER, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 14 C 01044 |
| v. | )<br>) |
| | ) Judge Edmond E. Chang |
| ECOLAB, INC., | )<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Steven Schneider works as a "route sales manager" for Ecolab, Inc., which provides cleaning and sanitizing products and services for businesses. On behalf of a class of others who share his position, Schneider alleges that Ecolab should have paid him overtime, rather than classifying him as exempt from overtime payments. That claim is brought under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.*, which requires not just a minimum wage but also, generally speaking, the payment of overtime to non-exempt employees. In addition to the IMWL claim, Schneider invokes another wage law that Illinois has on the books, the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1 *et seq.* Going beyond common-law contract law, the IWPCA compels employers to honor contracts and agreements with employees to pay them compensation, on pain of a 2% penalty of the unpaid compensation and attorney's fees (and the statute of limitations reaches

back five years, whereas the IMWL's limitations period is, at most, three years).[1]
Ecolab has moved for partial summary judgment against the IWPCA claim, arguing that Schneider cannot show that there was an employment agreement entitling him to the additional compensation he seeks. For the reasons described below, the motion is granted.

# I. Background

For purposes of this motion, the following facts are viewed in the light most favorable to Schneider, and all reasonable inferences are drawn in his favor. Schneider began working for Ecolab as a route sales manager in May 2008. R. 68, DSOF ¶ 4.[2] Ecolab sells products used by commercial clients to clean and sanitize

---

[1] The initial complaint in this case was filed in state court and included a federal Fair Labor Standards Act claim, so federal-question jurisdiction applied, with supplemental jurisdiction covering the state-law claims. Schneider later dropped the federal claim, however, and only the two state-law claims remain. Subject matter jurisdiction is still secure as to the current parties—Schneider and Ecolab—because they are of diverse citizenship and the amount in controversy is more than $75,000. But as this case continues to move forward on the IMWL claim and the proposed class action, the Court does order jurisdictional memoranda to ensure that subject matter jurisdiction would be secure if a class is certified for the IMWL claim. The parties invoke the Class Action Fairness Act, 28 U.S.C. § 1332(d), under which the amount in controversy must exceed $5,000,000. 28 U.S.C. § 1332(d)(2). Furthermore, there is the potential for the exercise of discretion to decline jurisdiction if certain citizenship and other criteria are met, *id.* § 1332(d)(3). (Section 1332(d)(4)'s exception to CAFA jurisdiction does not appear to apply, because Ecolab is not an Illinois citizen.) By April 1, 2015, the parties must file jurisdictional memoranda explaining, in detail, why CAFA jurisdiction applies and the discretionary exception either does not apply or, if it applies, jurisdiction should not be declined. If the parties agree that jurisdiction applies, then they may file a joint jurisdictional memorandum with the pertinent explanations.

[2] Citation to the docket is "R." followed by the entry number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Ecolab's Statement of Facts); "PSOF" (for Schneider's Statement of Additional Facts) [R. 74 at 17-19]; "Pl.'s Resp. DSOF" (for Schneider's Response to Ecolab's Statement of Facts) [R. 74 at 1-17]; and "Def.'s Resp. PSOF" (for Ecolab's Response to Schneider's Statement of Additional Facts) [R. 79]. Where a fact is admitted, only the asserting party's statement of facts is cited; where an assertion is otherwise challenged, it is so noted.

dishes, glassware, and cookware, as well as countertops, appliances, and floors. *Id.* ¶ 10. In his role as a route sales manager, Schneider is responsible for 80 to 90 primarily food-industry customers within a "territory" located south of Milwaukee, Wisconsin. *Id.* ¶ 5. Ecolab asserts that Schneider provides both sales and service to these clients, while Schneider maintains that his responsibilities do not include sales, which are handled by other employees, such as sales development managers and corporate account executives. *Compare id.* ¶ 5 *with* Pl.'s Resp. DSOF ¶ 5. Instead, according to Schneider, his primary duties have always been to install and maintain Ecolab's washing equipment for the company's customers. PSOF ¶ 57.

Schneider was interviewed for his position in 2008 by David Esposito, who at that time was a route supervisor. *Id.* ¶¶ 15-16. What they discussed about the route sales manager position during the interview process is a key point of contention. Ecolab insists that Schneider was told, and understood, that the position was salaried, as in, not based on an hourly wage and providing no possibility of any overtime pay. *Id.* ¶ 18. In his version of events, Schneider was told that the position was salaried but required 40 to 50 hours a week of work; he denies that he ever understood that he would not be paid additional overtime compensation for hours worked beyond that amount, Pl.'s Resp. DSOF ¶ 18, although Schneider does not say that he was *affirmatively* told that he would be paid overtime. Esposito asserts that he informed Schneider, like all new hires in the route sales manager position,

3

that the job required flexibility and could involve as many as 50 to 60 hours a week. DSOF ¶ 19.[3]

Schneider received a letter dated April 14, 2008, from Esposito, offering Schneider a job with Ecolab as a route sales manager. *Id.* ¶ 20. The letter stated that the position was salaried; the letter did not say anything about paying overtime compensation, nor did it mention the number of hours the position requires per week. *Id.* ¶ 21; R. 70-14, Offer Ltr.[4] Schneider signed and returned the letter, stating that he understood and agreed to its terms. DSOF ¶ 20. Schneider also received and signed a confidentiality agreement. *Id.* ¶ 22. The confidentiality agreement stated that Ecolab would pay Schneider "compensation, including salary and employee benefits" that "shall be deemed to be mutually agreeable to both parties if [Ecolab] pays the compensation and [Schneider] accepts the compensation." R. 70-15, Employment Agreement.

---

[3]Schneider objects to DSOF ¶ 19, as well as Paragraphs 20, 29, 31, and 37-39 of Ecolab's Statement of Facts, on the grounds that they include multiple and/or immaterial facts in violation of Local Rule 56.1, and seeks to have them stricken. R. 73, Pl.'s Resp. Br. at 2-3. The Court has broad discretion in ensuring compliance with its rules governing summary judgment. *See, e.g., Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). Here, the cited statements of fact, if they do violate Local Rule 56.1, do not rise to a level requiring them to be stricken. First, the Court does not find the facts they include to be immaterial. Second, although it is true that some of these statements are overly long (DSOF ¶ 37 is just a long block quote from Schneider's deposition), "[t]he local rule does not restrict a paragraph to one fact or one sentence." *Fishering v. City of Chicago*, 2009 WL 395462, at *2 (N.D. Ill. Feb. 18, 2009). "To be sure, very often the best practice will be to limit the paragraph to only one fact, and asserting more than one fact does expose the party to an argument that Local Rule 56.1 is being abused." *Deffebaugh v. BNSF Ry. Co.*, 2015 WL 1230075, at *5 (N.D. Ill. Mar. 16, 2015). In this case, the Court is satisfied that no abuse occurred.

[4]Ecolab filed two versions of exhibits to its statement of facts, one public with confidential information redacted and one under seal. The Court cites to the latter, though no confidential information needs to be disclosed in this Opinion. The public version is available at R.69, with the same corresponding exhibit numbers.

For his first six months of employment, Schneider was considered an unassigned route sales manager. PSOF ¶ 45. During this time, Schneider worked 40 to 50 hours per week and was paid on a salaried basis. *Id.* ¶¶ 46, 47. In January 2009, Schneider was assigned to his current route. *Id.* ¶ 48. From that point until mid-2011, Schneider alleges that he worked on average between 60 and 70 hours per week. *Id.* ¶ 51. Once assigned to his territory, he has been compensated with a salary, as well as commissions and bonuses. *Id.* ¶ 49. Between 2011 and late 2013, Schneider alleges that he worked between 50 and 70 hours per week on average. *Id.* ¶ 52. Since late 2013, according to Schneider, he has worked 40 to 50 hours weekly. *Id.* ¶ 53.

Throughout the course of Schneider's employment, Ecolab issued annual versions (which did not differ materially) of a "compensation plan" for Schneider's position, laying out the pay components as salary, commissions, and bonus, as well as mentioning the possibility of remuneration on a "straight salary" in certain conditions. DSOF ¶ 28; Pl.'s Resp. DSOF ¶ 28; R. 70-4–70.10, Incentive Compensation Plans 2008 to 2014. The compensation plans never mentioned the number of work hours required, DSOF ¶ 27, nor did they mention overtime pay, *see, e.g.*, 2008 Incentive Compensation Plan. At the same time, Ecolab also maintained written policies in the form of employee handbooks that explained that "non-exempt employees," such as customer service or maintenance workers, would be paid overtime. PSOF ¶ 54; R. 74.2–74.5, Policy Manual Excerpts.

Schneider has never received any overtime compensation from Ecolab. PSOF ¶ 59. As he tells it, he was never told that his position was "exempt" from any overtime compensation. R. 74-2, Schneider Decl. ¶ 2. It was only around October 2013, that he "came to believe that the [route sales manager position was] misclassified as exempt." Pl.'s Resp. DSOF ¶ 41. Schneider subsequently commenced this lawsuit.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th

Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. The IWPCA

The purpose of the IWPCA is to ensure that employers honor the terms of their agreements with employees by paying, at least semi-monthly, all wages that have been earned. 820 ILCS 115/3. The employer must provide "any compensation owed an employee … pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. This requirement is distinct from minimum and overtime wage obligations under the federal Fair Labor Standards Act (FLSA) and analogous state laws like the IMWL. *See* 29 U.S.C. § 206 (setting federal minimum wage of $7.25 per hour); 29 U.S.C. § 207 (requiring employers to pay one and one-half times the regular hourly rate after 40 weekly hours); 820 ILCS 105/4 (state minimum wage of $8.25 per hour); 820 ILCS 105/4a (same state overtime as under FLSA). The IWPCA holds employers to what they agreed to compensate a worker, even if that promise went beyond what the law otherwise minimally requires. An action under the IWPCA has another practical consequence that makes it distinct from an IMWL (or FLSA) claim, as the IWPCA allows for a longer limitations period. *Compare People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 996 (Ill. App. Ct. 2003) (five-year "catch-all" period under Illinois Code of Civil Procedure applies to IWPCA) *with* 820 ILCS 105/12 (three-year

statute of limitations under IMWL) *and* 29 U.S.C. § 255(a) (two-year period under FLSA, three years where violation was willful).[5]

To prevail on an IWPCA claim, the plaintiff must first establish, not surprisingly, that there was a valid employment contract or agreement to pay the compensation at issue. *Hess v. Kanoski & Associates*, 668 F.3d 446, 452 (7th Cir. 2012). In this context, "an 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004) (citing Black's Law Dictionary 35 (abridged 5th ed. 1983); Restatement (Second) of Contracts § 3, Comment a, at 13 (1981)). For instance, "an employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation[.]" *Landers-Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005).

### B. No Agreement to Pay Overtime

The inquiry is straightforward: has Schneider offered evidence sufficient to allow a reasonable jury to find that he and Ecolab agreed that he would be paid overtime?[6] As explained below, Schneider cannot. His own deposition testimony

---

[5]Ecolab alludes to a ten-year period of limitations, but without citation to any authority. R. 66, Mot. Partial Summ. J. ¶ 5.

[6]Schneider argues in some places that each hour over 40 hours per week was compensable as overtime, in other places he argues that only hours over 50 count, and, in still other places, he argues that that hours worked over "40-50 hours" are overtime (though it is not clear how a range makes sense in practice). Ecolab objects that the argument that

8

sinks the claim. And the employee policy manual on which he heavily relies does not bear the weight he puts on it.

### 1. Deposition Testimony

In an affidavit submitted in opposition to summary judgment, Schneider avers that during his job interview, Ecolab "informed me that the Route Sales Manager position was salaried and would require me to work 40 to 50 hours per week. [Ecolab] did not inform me that I would not be eligible for overtime if I worked in excess of 40 to 50 hours per week." Schneider Decl. ¶ 2. But as Ecolab points out, Def.'s Reply Br. at 3-5, this assertion (which does *not* outright state that Ecolab did agree to pay overtime) is controverted by his earlier deposition testimony.

Schneider testified at his deposition that he "was told that [the job] was 40 to 50 hours a week" and that he "understood that there was going to be overtime that I would have to work within that 40 to 50 hours that wouldn't be covered." R. 75-1, Schneider Tr. at 360. He continued, "when the workload became more than that [and no overtime was paid], that's when I felt like the terms [of employment] had been violated." *Id.* But when asked in greater detail about his understanding of the position's workload and compensation, Schneider repeatedly testified that at the time he had no expectation of overtime at all. When asked if he understood then that the job was salaried and "was not a position that paid overtime," he responded

---

relies on 50 hours as the threshold is a theory that Schneider improperly raises for the first time during summary judgment and not in his pleadings, which instead refer to overtime owed from misclassification as overtime-exempt as a whole. R. 78, Def.'s Reply Br. at 13. Because the Court grants partial summary judgment against this claim, Ecolab's objection need not be considered.

9

"yes" without any qualification. R. 70-1, Schneider Tr. at 72. He affirmed a second time when asked to confirm that the "position [he] accepted was salary, no overtime," *id*. at 82, and, yet again, that he was "not going to get overtime," *id*. at 83.

Later, still pressed on this point, he gave the same answer:

Q: And you had no expectation of being paid overtime, correct?

A: Not upon hiring, no.

Q: And even up until today, unless or until something happens with your litigation, you have no expectation had [sic]—up until today had no expectation of being paid overtime, correct?

A: No.

*Id*. at 102. Finally, to *really* drive home the point, Ecolab's counsel probed:

Q: And you understood that salary means you get paid your salary, whether you work 10 hours in a week or 50 hours in a week, right?

A: True.

Q: You got the same salary. Or whether you worked 70 hours a week or 20 hours a week, you get the same salary every week, right?

A: True.

*Id*. at 364-65. It is clear, particularly from this last line of questioning, that Schneider was explaining his lack of expectation of *any* overtime no matter how many hours he worked, not just within the context of a 40-to-50 hour workweek.

Schneider attempts to counter the force of this testimony by arguing that it reflected simply "what he understood Ecolab's employees *told* him about the compensation he would receive." R. 84, Pl.'s Sur-Reply Br. at 4 (emphasis in

10

original). But even if that spin were plausible (which it really is not, in light of Schneider's clear, unequivocal responses testifying as to *his* understanding of the agreement), it is not enough to save his IWPCA claim. What Schneider overlooks is that he needs to establish "a manifestation of mutual assent" from *both* parties about the purported terms of his employment agreement. *Zabinsky*, 807 N.E.2d at 671. What *he* claims to have understood is only half the equation. Schneider must also show evidence, on which a reasonable jury could find for him, that *Ecolab* offered or mutually assented to pay him overtime pay for any hours worked above 50 (or whatever he argues is the pertinent threshold). *See, e.g.*, *Gallardo v. Scott Byron & Co.*, 2014 WL 126085, at *15 (N.D. Ill. Jan. 14, 2014) (granting partial summary judgment against employee on IWPCA claim where he could not substantiate "implicit understanding" of compensation for "off the clock" work). Ultimately, Schneider's testimony only really goes to (at best) *his* expectations. *See* Schneider Decl. ¶ 2 ("Throughout my employment with Ecolab, I have expected that I would be entitled to overtime compensation for any hours worked beyond 40 to 50 hours per week."). For instance, Schneider's formulation that Ecolab "did not inform me that I would not be eligible for overtime if I worked in excess of 40 to 50 hours per week," *id.*, is not the same as showing that Ecolab affirmatively understood or assented, or even told him, that it *would* pay overtime.

Indeed, Schneider's deposition testimony establishes that even his own expectations for overtime likely did not originate at the time of his hiring, as he now claims. Remember that Schneider testified that he had no expectation of overtime,

11

"not upon hiring" anyway. Schneider Tr. at 102. He also testified that his suspicions about Ecolab's pay practices were only aroused after speaking with a colleague and former business owner who remarked on his surprise at how the company was classifying route sales managers: "that got me into researching the difference between exempt and non-exempt positions." *Id*. at 338. In fact, Schneider acknowledged that he had been satisfied with his compensation with Ecolab "[f]or years until I researched it." *Id*. at 366. Taken together, this testimony reveals that Schneider ultimately discovered that he was (allegedly) misclassified as an overtime-exempt sales employee, not that Ecolab reneged on a purported agreement, which the parties supposedly shared all along, to pay overtime.[7] *See id*. at 333-34 (Schneider explaining his belief that his position was misclassified).

To be clear, misclassification is a valid premise for an overtime claim under the IMWL (and, when it was a claim in the case, the Fair Labor Standards Act). And it does appear that the record discloses a material dispute between Schneider and Ecolab about what his duties primarily involved, sales (which would make him non-eligible for overtime) or maintenance (which would make him eligible). *See* 820 ILCS 105/3(d)(4) (exempting "outside salesm[e]n"); *compare* DSOF ¶ 5 *with* Pl.'s Resp. DSOF ¶ 5. But misclassification is a cause of action for non-payment of overtime under the IMWL, which is not at issue in this motion; misclassification by itself is not enough to state an IWPCA claim. Under the IWPCA, there must have

---

[7]This observation is not to suggest that the two types of claims are *always* mutually exclusive. *See, e.g.*, *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 661 (N.D. Ill. 2012) (IWPCA and IMWL have "overlapping" goals). It is of course possible to assert both a misclassification and an agreement to pay overtime (misclassification or no).

12

been a contract or agreement to pay overtime. And no reasonable jury could rely on Schneider's testimony to infer the existence of a mutual agreement on the lines that he now asserts.

## 2. Employee Policy Manual

Schneider's reliance on a "written overtime policy" adopted by Ecolab, R. 73, Pl.'s Resp. Br. at 4-7, is similarly misplaced. The policy in question was included in a manual issued to employees and stated, under the heading "Time Reporting," that "associates in non-exempt positions: must keep time records, receive overtime pay, [and] work in position [sic] such as … maintenance and laborers." R. 74-2, Policy Manual at 130. Associates in exempt positions, including management and sales, by contrast, were not required to keep time records and do not receive overtime pay. *Id*. Schneider, who was required to maintain records of his work hours, Schneider Decl. ¶ 4, argues that he was covered by this policy, which he construes as proof that Ecolab always agreed to give him overtime compensation. Pl.'s Resp. Br. at 5.

The policy might very well be sufficient evidence of Ecolab's knowledge of Schneider's right to overtime under the IMWL, but *not* the IWPCA. Remember that Schneider's obligation at this stage is to present evidence of Ecolab's intent to pay him overtime for hours above some weekly threshold, pursuant to the terms of a mutual agreement between the parties, and not simply pursuant to the IMWL. The policy manual makes *no* mention of overtime compensation over a certain threshold of weekly hours, as Schneider needs to prove; instead, it explains that its discussion of "exempt" versus "non-exempt" employees tracks the meaning of those terms

13

under the FLSA, which "mandates overtime for work in excess of *40 hours* during a given workweek." Policy Manual at 130 (emphasis added). In other words, the policy manual might show that Ecolab violated its legal obligations in considering Schneider an exempt employee, if indeed he was misclassified under the IMWL. But it in no way shows Ecolab's assent to the specific provision that it would pay him for work in excess of 50 hours per week. As far as the IWPCA is concerned, therefore, the policy is a red herring.[8] Just as with his deposition testimony, Schneider cannot raise a material issue about the existence of an agreement on the basis of the policy manual.

---

[8]Schneider argues that he "assented to the terms of this policy by continuing his employment." Pl.'s Resp. Br. at 6. True enough, but the policy merely described Ecolab's commitment to legal obligations to properly characterize its employees as either exempt or non-exempt for purposes of overtime pay for statutory workweeks over 40 hours. But on Schneider's claim of an agreement for overtime over 50 hours (or 40 to 50 hours, depending on what Schneider is arguing), his continued employment actually cuts against him. He was hired in 2008, ostensibly with the 50-hour understanding in mind, yet even after his work hours ballooned to as much as 70 from January 2009 onward, he continued to work and receive the same salary without any indication of displeasure. PSOF ¶¶ 51, 52. It was only in 2013, after *four years*, that he complained. "[A]n employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation[.]" *Landers-Scelfo*, 827 N.E.2d at 1059. Schneider's continued work-as-usual leads, if anything, to an inference that, at the time, he believed that he and Ecolab were being "consistent with an employment agreement."

## IV. Conclusion

For the reasons stated above, Schneider cannot establish that there is a genuine issue of fact as to whether Ecolab agreed to pay him overtime. Accordingly, Ecolab's motion for partial summary judgment on Schneider's IWPCA claim is granted.

                                                ENTERED:

                                                s/Edmond E. Chang
                                          Honorable Edmond E. Chang
                                          United States District Judge

DATE: March 25, 2015